REUBEN CARPENTER *vs.* OTIS WALKER & others.

Worcester.   Oct. 1, 1885. — Jan. 5, 1886.   FIELD, C. ALLEN, & GARDNER, JJ., absent.

A boiler and engine, cast together and weighing fifty-six hundred pounds, not attached to real estate except by being belted to shafting, do not necessarily, as matter of law, pass under a mortgage of the real estate, although they cannot be removed except by removing a shed built over them to protect them from the weather, or by enlarging an entrance to another building on the land.

Machines separately constructed, adapted to the work carried on in the building in which they are, but which can be used in the same business elsewhere, and which are secured in position by nails, screws, cleats, and braces, and belted to shafting, do not necessarily, as matter of law, pass under a mortgage of the building and the land on which it stands.

BILL IN EQUITY, filed February 11, 1884, in the Superior Court, against Otis Walker, Thomas E. Rich, and Paris Rich,

alleging that the two last-named defendants, on June 19, 1883, executed a mortgage of certain chattels to the plaintiff; namely, a boiler and steam-engine and certain machinery, to secure their promissory note for $1000, payable to the plaintiff or order, on demand; and that the defendant Walker had possession of the building in which said chattels were, and refused to deliver them to the plaintiff, or to allow him to take possession of them for the purpose of foreclosing his mortgage.

The prayer of the bill was, that Walker be restrained from preventing the plaintiff from taking possession of said chattels, and from moving, concealing, and disposing of the same; and for further relief.

The defendant Walker filed an answer, alleging title to the property by virtue of a mortgage, executed to him by the two last-named defendants on June 20, 1881, which conveyed a certain parcel of land with the buildings thereon. The answer also alleged that all the articles mentioned in the bill, except the boiler and engine, were in the building at the time the mortgage to Walker was made; that the boiler and engine were subsequently placed therein; and that all of the articles were fixtures.

The case was referred to a master, who found the following facts:

The engine, boiler, and machinery were used in a mill or factory building standing on the land mortgaged to Walker, and were used in carrying on the business of making sashes and blinds.

The boiler and engine were cast together, the engine being on top of the boiler. Their united weight was fifty-six hundred pounds. Two iron legs projected from the rear end of the boiler and stood on timbers. There were also two small projections, one on each side of the boiler near its front end, but the front end rested on bricks, which were built up to form the ash-box and placed around and laid to prevent fire. A shed was built over the engine-house and boiler, the grist-mill building and the sash and blind building constituting one end and side of said shed. There was no doorway into this shed except an opening from the sash and blind mill, and the boiler and engine could not be removed except by removing the shed or by taking off

some boards to enlarge the opening into the factory. The shed was built over the boiler and engine to protect them from the weather. The boiler and engine were not fastened to the building, nor to the land, except that the engine was belted to the main shaft, but they were kept in place by their own weight. They were called "Allen's Portable Boiler and Engine." I find the boiler, engine, and attachments to be portable, and that they retained the character of chattels.

There were ten or more machines described in the plaintiff's bill, all of which were used in the factory to make sashes and blinds, as follows:

1. A jointing-machine, with circular saw and track: fastened at the bottom by cleats about the legs, which were nailed to the floor; and the feet of the machine were nailed to the floor.

2. A tongue-groover or matching-machine: wood, fastened with cleats and feet nails, and had not been moved since it was set up.

3. A planing-machine: cast-iron, screwed to the floor with Colt screws; this had not been moved since it was set up.

4. A circular saw and table: wooden frame, fastened by cleats and nails.

5. A heavy machine called a slat-planer: wood, with iron legs made to be bolted down to the floor.

6. A sticker: fastened to the floor by Colt screws, which are turned by a wrench.

7. A cut-off saw and table: wood frame, fastened by cleats and nails to the floor.

8. A slat-machine for tenoning: iron frame, screwed to the floor.

9. Boring-machine: wooden frame, held mainly by cleats.

10. Mortising-machine: iron, fastened by four screws to floor, steadied on top by braces nailed to ceiling.

11. Sand-paper machine: cleats round the bottom, and fastened to the floor above.

The said machinery was all connected with the shafting, directly or indirectly, by pulleys or gearing, and was run by belts. The machines stood over the shafting, which was under the floor and in a position convenient to be run by said shafting. None of the machines was very heavy. They were movable, and

were sometimes, though not often, moved. They were adapted to do the work carried on in the mill, but could be used elsewhere in the same business.

The master found all of said machines to be personal property, and to be included in the plaintiff's mortgage, but not in the defendant Walker's; and all the shafting to be part of the realty, and to belong to said defendant.

Walker filed the following exceptions to the report:

" In that, upon the findings of fact as to the boiler and engine, the master has erred in his findings of law, that a boiler and engine, placed as this boiler and engine were placed, and resting upon a brick foundation as did this boiler, and used for conveying power to this sash and blind shop, were chattels, instead of real property included in and subject to the defendant's mortgage.

" In that, upon the findings of fact as to the machinery named from paragraphs 1 to 11, fastened to the building in the manner set forth in said report, and used for carrying on the business of manufacturing sashes and blinds in the building upon the land described in the defendant's mortgage, which building was built for that purpose, the master has erred in his finding of law, that such machinery is a chattel, instead of real property included in and subject to the defendant's mortgage."

*Pitman*, J., overruled the exceptions, and ordered a decree for the plaintiff; and the defendant Walker appealed to this court.

· *J. M. Cochran*, for the defendant Walker.

*A. J. Bartholomew*, for the plaintiff.

HOLMES, J. Perhaps it would have saved perplexing questions, if, as between vendor and purchaser, or mortgagor and mortgagee, the rule of the common law had been adhered to more strictly, that whatever is annexed to the freehold by the owner becomes a part of the realty, and will pass by a conveyance of it. Y. B. 21 Hen. VII. 26, pl. 4. *Elwes* v. *Maw*, 3 East, 38; *S. C.* 2 Smith Lead. Cas. (8th Am. ed.) 191. *Fisher* v. *Dixon*, 12 Cl. & Fin. 312, 328, *& seq. Mather* v. *Fraser*, 2 K. & J. 536. *Walmsley* v. *Milne*, 7 C. B. (N. S.) 115. *Gibson* v. *Hammersmith Railway*, 32 L. J. Ch. 337, 340. *Climie* v. *Wood*, L. R. 4 Ex. 328. *Holland* v. *Hodgson*, L. R. 7 C. P. 328. *Meux* v. *Jacobs*, L. R. 7 H. L. 481, 490. The right of a tenant to sever chattels

which he has attached to the realty might be admitted, and yet the property might be regarded as land until severed, as it seems to be in England. The language of *Hellawell* v. *Eastwood*, 6 Exch. 295, which looked the other way, has been criticised in the later cases, some of which we have cited.

But the later decisions of this Commonwealth establish that machines may remain chattels for all purposes, even though physically attached to the freehold by the owner, if the mode of attachment indicates that it is merely to steady them for their more convenient use, and not to make them an adjunct of the building or soil. *McConnell* v. *Blood*, 123 Mass. 47. *Hubbell* v. *East Cambridge Savings Bank*, 132 Mass. 447. *Maguire* v. *Park*, *ante*, 21.

It is more important to respect decisions upon a question of property than to preserve a simple test; and, for this reason, the decree of the Superior Court must be affirmed. The master reports that he finds the articles in controversy to be personal property, and we cannot go behind this finding, unless the facts found specially require a different conclusion, as matter of law. The special facts are, that the boiler and engine were portable, and not attached to the realty, except that they were belted to the main shaft; but that they could not be removed except by removing a shed built over them to protect them from the weather, or by taking off some boards to enlarge the opening into the factory. The machines were fastened to the floor by cleats, screws, or nails. We cannot say, as matter of law, that these facts are inconsistent with the master's finding, in view of the cases cited. We must take that finding to exclude the articles having been put where they were as a permanent improvement to the building, whatever conjecture we might have formed but for the master's general conclusion. *Decree affirmed.*