BETSEY A. BATCHELLER *vs.* COMMERCIAL UNION ASSURANCE COMPANY.

Worcester.   October 7, 1886. — February 23, 1887.

In February, 1876, A. agreed for a certain consideration to build a school-house for a school district in a town. The contract contained expressions indicating that the building when finished was to belong to the district. The location of the house was not then determined upon. In March, the district voted, at the solicitation of A., to erect the school-house on a certain lot, then owned by a third person; and A. promised to give the land to the district. In April he bought the land, taking a deed in his own name, and also made a deed conveying the land to the district, but did not deliver it. In May, A. received his pay in full for building the school-house. Until 1882 the district had possession of the school-house, and until 1884 the town was in possession. During this time the building was insured by the district or by the town, and part of the time it was so insured with the knowledge and with the advice of A. In 1884 A. took possession of the school-house, and conveyed it, through a third person, to his wife. *Held*, in an action by the wife on a policy of insurance issued to her husband after he took possession of the building, and assigned to her, for loss of the building by fire, that there was evidence that the building was personal property, and belonged to the town, although it was fixed to the land. ˙

CONTRACT upon a policy of insurance, dated March 4, 1884, in the form prescribed by the Pub. Sts. *c.* 119, § 139, issued to Horace Batcheller and assigned to the plaintiff, against loss by fire, upon a school-house in Sutton. The answer alleged that the plaintiff had no insurable interest. Trial in the Superior Court, before *Hammond*, J., who reported the case for the determination of this court, in substance as follows:

The school-house of School District No. 7 in Sutton was destroyed by fire before September, 1875. On February 28,

1876, a committee duly chosen by the legal voters of the district executed a contract in writing, under seal, with Horace Batcheller, " in behalf of said district, for building for them a schoolhouse." Batcheller covenanted " to grade the lot agreed upon by said district for their school-house, according to the direction of the said committee; to put in the foundation, furnish the underpinning and door-steps, and furnish all the material of every kind; and to make, erect, build, and finish, in a good, substantial, and workmanlike manner, upon the site designated by said committee, a school-house for said district," according to certain plans and specifications. The school district, by its committee, covenanted and agreed to pay Batcheller " for the same completed " the sum of $748, the whole amount to be paid " on the completion and acceptance of the school-house."

At the meeting of the district on February 26, 1876, it was voted, on motion of Horace Batcheller, " to get the school-house insured as soon as completed; " and that " L. Taylor should get the building insured, but not before the day of completion."

At a meeting held on March 7, 1876, pursuant to a vote of the meeting, a building contract was made, and at that meeting it was voted that Batcheller should give no bonds. Up to this time it had been a controverted question where the school-house should be erected. There was evidence tending to show that Horace Batcheller specially advocated and pressed upon the district a location near his own house at South Sutton Four Corners, so called; that he was the active adviser and advocate to the district of such change in the location of the school-house; that at a legal meeting held on March 16, 1876, it was voted, in accordance with the express desire of Batcheller, " To change the location of the school-house lot; " and " to locate the lot on P. Johnson's land west of Widow Kelly's." This last location was the one which had been advocated by Batcheller, and was the one agreed upon by him and the committee of the district pursuant to this vote as to the location of the school-house, and was the one upon which the school-house was actually built. The house was built according to the contract.

After the school-house was built there was difficulty in settling matters with Batcheller in full, he claiming for extra work a sum exceeding $600, which was not paid by the district. But on or

before May 16, 1876, he had been paid by the district the whole contract price for building the school-house, which had been finished in 1876, and which was continuously occupied by the district from that time until the existence of the district was terminated by the Legislature's abolishing school districts in 1882; after which the town of Sutton occupied the building uninterruptedly for the regular terms of school, including the term ending in the latter part of February, 1884.

In 1877, on the adjustment of another small matter with the district, which was ruled to be immaterial in this case, Batcheller signed and gave the following receipt for the contract price:

" South Sutton, May 16, 1876.

" Received of Edwin H. Leaver, treasurer for School District No. 7, $748 in full for building a school-house according to contract and specifications thereto annexed."

On March 5, 1881, at a legal meeting, and under the appropriate article in the warrant, the district voted to raise $25 for insurance and repairs, and the evidence tended to show that this insurance applied to the school-house building in question; that Batcheller was present at the meeting, engaged in the discussion as to what company the district had better insure in, and subsequently had a conversation with one Morse in regard to calling a new meeting to change the insurance company, which meeting however was not called.

At all other meetings of the district at which the building of the school-house, the insurance thereof, or the location thereof was mentioned, Batcheller, as the evidence tended to show, was present, and in them he was an active participant.

The evidence further tended to show that at the time Batcheller was advocating a change of location of the school-house to the spot where it was finally built, which was near his house, he was not the owner of the land upon which the house was built, but that it was owned by Pliny F. Johnson ; that Batcheller made a proposition in a meeting assembled, and also to the committee who had been empowered by the district to build the school-house, that, if they would change the location and locate the school-house upon Johnson's land, he would build the same for $748, and would give the district the land.

After the vote to locate and the entering upon a contract with the town, namely, on April 26, 1876, Batcheller purchased from Johnson the land upon which the school-house was located, and took a deed thereof to himself.

There was evidence tending to show that Batcheller caused a deed of the lot to be prepared by a scrivener, by which he conveyed the land to School District No. 7 contemporaneously with or shortly after the conveyance by Johnson to him. This deed was never delivered, but the scrivener and others testified that Batcheller, then and afterwards, said that he should deliver the deed if the school district continued, but that if the school districts were abolished, and the town became charged with the maintenance of schools, he should not deliver the deed. The school-house was constructed, as buildings ordinarily are, on firm and permanent foundations set in the earth, and not on posts or wooden blocks.

There was evidence tending to show that, after the conclusion of the school in February, 1884, Batcheller took actual possession of the school-house, and took the lock from its door and placed a new lock upon it; and that on March 4, 1884, he advertised the house and lot for sale by auction, to take place on March 22.

There was also evidence tending to show that Batcheller moved the school furniture from the building to his own barn at his own house; that the inhabitants of Sutton thereupon, on March 20, 1884, brought a bill in equity in the Supreme Judicial Court seeking to restrain Batcheller from any further interference with the school-house; alleging that the district owned the same, and seeking to compel Batcheller specifically to perform his agreement aforesaid, by conveying the land upon which it stood to the town.

On the hearing for a preliminary injunction, held in Boston on April 4, 1884, after due notice given on April 1, an injunction *pendente lite* was granted against Batcheller, restraining him from interfering with the building, and a mandatory injunction requiring him to restore at once the furniture to the building until the further order of the court. When this decision and decree were announced, Batcheller and his wife, the plaintiff, were both present. On the morning of the next day, April 5,

the school-house was burned to the ground, and Batcheller, after returning home from Boston on the evening of the 4th, at night caused the furniture which he was ordered to restore to be replaced in the building, and it also was destroyed. Subsequently, the inhabitants of Sutton, unwilling to rebuild upon that site, and not caring to prosecute any claim to the land after the building was burned, consented to a decree of " bill dismissed," to dispose of the case.

The plaintiff's title to the real estate was acquired by a deed from Willard J. Littlefield, on March 21, 1884. Littlefield obtained his title from Horace Batcheller on the same day, and was merely the medium of transfer of title from him to his wife. Mrs. Batcheller on the same day conveyed to her husband, through the said Littlefield, another piece of land which she owned; and she said that was the consideration for the deed from her husband through Littlefield to her.

It appeared that the insurance which the district voted to procure, on motion of Batcheller, in 1875, as above stated, was procured for five years in the Worcester Mutual Insurance Company, was renewed in the same company at the end of that five years by the district, was cancelled by that company in consequence of some litigation in which Batcheller, early in 1884, sought to recover from the school district in one suit, and from the town in another, rent for the school-house.

It was offered to be shown by the defendant, that the town insured the school-house building in the Fitchburg Mutual Insurance Company at that time, and had since been paid by the said company insurance on the building. This evidence was ruled out by the judge; and the defendant excepted.

The defendant contended that, upon these facts, there was a question for the jury whether or not there was any such agreement between Batcheller and School District No. 7 as made the school-house the personal property of the district while Batcheller held the title to the land, or until the time of the fire.

The judge, being of the opinion that, upon all the facts offered in evidence, the jury would not be justified in finding that the school-house was personal property as between Batcheller and the town, ruled that there was an insurable interest in the plaintiff, she being the legal owner of both the land and the school-

house at the time of the assignment of the policy to her and at the time of the fire ; and, it being admitted that the value of the property insured was not less than the amount of the insurance, directed a verdict for the plaintiff for the amount insured, with interest.

If the defendant had a right to go to the jury, a new trial was to be granted; otherwise, judgment to be entered on the verdict.

*W. S. B. Hopkins*, for the defendant.

*T. G. Kent*, for the plaintiff.

HOLMES, J. A majority of the court are of opinion, that there was evidence for the jury that the school-house insured by the defendant was personal property as between the town of Sutton and the plaintiff Batcheller, and belonged to the town. No one doubts that, if an agreement to that effect were proved, it would be effectual. *Morris* v. *French*, 106 Mass. 326. *Howard* v. *Fessenden*, 14 Allen, 124. *Ham* v. *Kendall*, 111 Mass. 297. *Doty* v. *Gorham*, 5 Pick. 487. *Carpenter* v. *Walker*, 140 Mass. 416.

It appears by the report, that the school-house was built by Batcheller under a contract between him and the school district. The contract was made when it was still uncertain where the house would be built, and before Batcheller's promise to give the land. It therefore must be construed without regard to the ownership of the land on which it was built, and the conclusions to be drawn from the expressions used in it are not restricted by evidence that they were used with reference to expectations then entertained as to the ownership of the land.

By that contract Batcheller agreed, on February 28, 1876, with the district " for building for them a school-house," and speaks of it as " their school-house," agrees to furnish material and to make and finish " a school-house for said district," the compensation to be paid " on the completion and acceptance of the school-house." This was executed by Batcheller and the district, under seal. On March 16, 1876, it was voted on Batcheller's advocacy to locate on this land. On April 26 of the same year Batcheller bought the land, it would seem while the school-house was in process of building. The school-house seems to have been built in April and May. At all events, it was built in pursuance of the above contract. The foregoing facts,

coupled with the use of the building as a school by the town, and with Batcheller's conduct as to the insurance on March 5, 1881, and at other meetings, are some evidence, at least, that, as between Batcheller and the town, the town owned the school-house, and therefore, as it did not own the land, that the house was personal property. If the parties contemplated the result that the town should be owner in any event, it is not necessary that they should have contemplated specifically the legal machinery by which the result must be worked out. *Bassett* v. *Daniels,* 136 Mass. 547, 549. The case is not like those where a building is erected by a party having a bond for a deed of the land, as in *Poor* v. *Oakman,* 104 Mass. 309. In such cases there is nothing except the contemplation that the party building the house will acquire the land to show that it is contemplated that he is to own the house. The ownership of the house is wholly incident to the acquisition of the land.

The question whether the plaintiff had an insurable interest by reason of possession or otherwise, even if the house was personal property, is not raised by the report.

*New trial granted.*