C. B. COTTRELL AND SONS COMPANY *vs.* CARTER, RICE,
AND COMPANY CORPORATION.

Suffolk.    November 11, 1898. — March 28, 1899.

Present: FIELD, C. J., HOLMES, MORTON, & LATHROP, JJ.

*Replevin — Lease or Conditional Sale — Mortgage of Personal Property —
Taking Possession — Subsequent Conduct of Mortgagee — Action — Tender.*

A. and B. entered into a written agreement, by the terms of which B. hired of A.
certain machines, and was to pay a sum named by instalments at specified
times, and which provided that, if B. made default in the payment of any of the
instalments, A. might take possession of and remove the machines "as though
the agreement of hire had never been made"; and that, if no such default oc-
curred, A. was to execute to B. a bill of sale for the machines. B., before any
default, mortgaged certain property to a third person, "subject, however, to any
interest of A. in and to certain machines included herein," being the machines
in question; and, after a default by B., the mortgage was assigned. The assignee
took possession under the mortgage and foreclosed the same, after notice from
A. of his claim of ownership of the machines. *Held,* that A. could maintain
replevin against the assignee.

If the lessor of machines, leased under an agreement for payment by specified in-
stalments and providing that after default he may take possession of and
remove the machines "as though the agreement of hire had never been made,"
after a default in the payments, enters upon the premises and tags the machines
with his name, this constitutes a taking possession under the agreement, and a
removal of the tags and a sale of the machines under a mortgage given by the
lessee before default and assigned after default by the assignee of the mortgage
who purchases them at the sale, constitutes a wrongful interference with and
unlawful detention of the machines, and the lessor may maintain replevin
against the assignee without any demand; and a tender by the latter, after such
foreclosure, of the amount due on the machines is of no avail.

REPLEVIN of three printing presses. Trial in the Superior
Court, before *Hardy,* J., who allowed a bill of exceptions, in
substance as follows.

The following facts appeared in evidence. On March 10,
1892, the firm of C. B. Cottrell and Sons entered into an agree-
ment with Harry G. Collins, and in pursuance thereof delivered
the three presses which are the subject of this action to Collins,
at No. 15 Milton Place, Boston, where they remained until re-
moved under the replevin writ. This agreement recited that
C. B. Cottrell and Sons "let to hire" three printing presses for

the consideration of $3,300, to be paid by Collins in instalments of certain amounts at specified times, with interest; that if default should be made by Collins in the payment of any of the instalments, C. B. Cottrell and Sons might take possession of and remove the presses, "as though the agreement of hire had never been made and entered into"; and that if Collins should make no default in the payments stipulated for, C. B. Cottrell and Sons would execute to him "a bill of sale for said presses, the consideration whereof shall be the amount of the above mentioned instalments of hire." In February, 1893, the plaintiff succeeded to all the rights of C. B. Cottrell and Sons in these presses. Collins made all the payments required under the agreement on or about the date at which they were by its terms payable, except the instalment of $250 due April 13, 1894, the instalment of $250 due May 13, 1894, the instalment of $250 due June 13, 1894, on all of which payments interest was paid to these dates; and the instalment of $300 due July 13, 1894, on which last instalment no interest was paid, and such default was never waived.

On February 20, 1894, Collins conveyed all the property at No. 15 Milton Place for value to Theodore Nickerson by a mortgage, which was duly and properly recorded, "subject, however, to any interest of the C. B. Cottrell and Sons Company in and to certain machines included herein," and containing a power of sale. On August 25, 1894, Nickerson assigned this mortgage for value to the defendant, which assignment was not recorded. At this time there had been a default under the mortgage.

In May, 1894, the Collins Press Corporation succeeded to all the rights of Collins in all the property at No. 15 Milton Place, including the presses in question.

On October 16, 1894, there were present at No. 15 Milton Place, Collins, one Thompson, the treasurer of the Collins Press Corporation, one Bartlett, its bookkeeper, one Cottrell, the president of the plaintiff corporation, and one Baker, its New England general agent. Whereupon Collins stated that he desired to transfer the presses which he held from the plaintiff on lease to the Collins Press Corporation, to which Cottrell agreed. Cottrell then stated that the plaintiff would have to take these presses back as its machines, and that he would then resell them

to the Collins Press Corporation. Collins, Thompson, Cottrell, and Baker then went into the press-room, and Cottrell and Baker passed by each press and identified each machine which they were to take back and resell. At this time Cottrell said to Baker, "If you will identify these machines, if you will point out the machines, we will take possession of them." In the direction of pointing out, they passed from press to press and identified them. An agreement was executed at the bottom of the original agreement, that "the presses therein mentioned are hereby returned to the lessor, and this lease is hereby cancelled." A new agreement between the plaintiff and the Collins Press Corporation, similar in terms to the original agreement, was then executed, covering the three presses in question, and five others, which had been delivered to Collins by the plaintiff from time to time previously under similar agreements.

Payments were made by the Collins Press Corporation to the plaintiff in January and February, 1895, in accordance with the terms of this new agreement. A default under the new agreement occurred in March, 1895, and nothing was paid subsequently.

No notice of the transactions of October 16, 1894, was ever given to Nickerson or to the defendant, and there was no evidence that the defendant ever had any knowledge of them. Baker had no knowledge of the mortgage until May, 1895, and there was no evidence that the plaintiff had such knowledge. No search of the chattel mortgage records was ever made (to Baker's knowledge) by any one representing the plaintiff.

On May 23, 1895, Baker wrote to the defendant a letter containing the following: "Will you please have your auctioneer announce at the sale of the 'Collins Press' that presses numbered . . . are not included"; and on May 27, 1895, he wrote to the defendant another letter notifying the defendant that the presses in question belonged to the plaintiff, "and we shall hold you, your agents or servants, liable for any and all intermeddling with said property or any part thereof." These letters were both received by the defendant, the latter on the day of its date.

Subsequently to May 27, 1895, Baker went to No. 15 Milton Place and tagged the presses in question, and all others

which had been supplied by the plaintiff, with the plaintiff's name. At a later date, before June 5, 1895, he returned, and was refused admission in the first place, but afterwards got in and found the tags removed from the three presses in question. The defendant took possession of the property covered by the mortgage.

On June 5, 1895, the defendant, under its mortgage, sold the property covered by the mortgage at No. 15 Milton Place by public auction, and was the purchaser and only bidder. The defendant did not realize enough to pay the claim secured by the mortgage. The foreclosure was in accordance with the terms of the mortgage. At the sale the auctioneer announced that the plant would be sold as a whole, that five Cottrell presses were excluded, and, at the suggestion of the defendant's treasurer, read the letter of May 27, 1895, from Baker to the defendant, and stated that there was a dispute as to the ownership of the three presses, that they would guarantee nothing, and that they claimed there were certain rights.

On June 10, 1895, the defendant offered to Baker, who had charge in a general way of the collections for the plaintiff in New England, $1,200 in legal tender, and at the same time handed him a letter stating that, upon the foreclosure of the mortgage from Collins to Nickerson, the defendant " purchased all rights whatsoever under the said mortgage "; that " we understand that the amount due on these three presses is $1,050 and interest "; that " we herewith tender you $1,200 to cover any balance due on the presses "; and that, " if by any chance more is due on these presses, we stand ready to pay the same." Baker said that he was not prepared to accept this at that time, and that, if the plaintiff decided so to do, he would let the defendant know.

There was no other evidence of any demand on the defendant for these presses, and no evidence of any demand on the defendant for any payment, nor was there any offer of payment by the defendant except the offer of June 10, 1895, to Baker.

The defendant requested the judge to rule that, upon this evidence, the plaintiff could not recover; but the judge refused so to rule, and directed the jury to return a verdict for the plaintiff. The defendant alleged exceptions.

*G. R. Nutter & E. F. McClennen,* for the defendant.

*E. O. Cooke,* for the plaintiff.

MORTON, J.   Whether the agreement under which Collins received the presses, and to which the plaintiff succeeded before the mortgage by Collins to Nickerson, was one of hiring simply, or was a conditional sale, no title in the presses passed to Collins or could pass under it till the instalments were all paid.  *Wentworth* v. *Woods Machine Co.* 163 Mass. 28.  *Robinson* v. *Bird,* 158 Mass. 357.  *Nichols* v. *Ashton,* 155 Mass. 205.  *Hirschorn* v. *Canney,* 98 Mass. 149.  *Coggill* v. *Hartford & New Haven Railroad,* 3 Gray, 545.  *Ex parte Crawcour,* 9 Ch. D. 419.  *Crawcour* v. *Salter,* 18 Ch. D. 30.  Benjamin, Sales, (6th ed.) § 345.

The lessor or vendor could reclaim the property from one who had purchased of Collins in good faith and without notice. *Wentworth* v. *Woods Machine Co., Hirschorn* v. *Canney,* and *Coggill* v. *Hartford & New Haven Railroad, ubi supra.*

The position of the defendant can be no stronger because it claims through a mortgage from Collins than it would be if it claimed through a vendee from him.  If Collins had paid the instalments as they fell due, or had complied with the other conditions, the presses would have belonged to him, and the mortgage would have been good.  *Currier* v. *Knapp,* 117 Mass. 324.  *Crompton* v. *Pratt,* 105 Mass. 255.  *Day* v. *Bassett,* 102 Mass. 445.

But neither he nor any one claiming under him acquired any rights by reason of his failure to pay the instalments.  On the contrary, the agreement expressly provided that, in such a contingency, the plaintiff could take possession of the presses and remove them " as though the agreement of hire had never been made and entered into."  We see nothing that cuts down this right on the part of the plaintiff.  When the plaintiff took possession in October, 1894, it had no notice, constructive or otherwise, of the mortgage which Collins had given to Nickerson. We do not mean to intimate that, if it had, its rights would have been affected.  The recording of the mortgage was not constructive notice to the plaintiff.  *George* v. *Wood,* 9 Allen, 80.  *Bates* v. *Norcross,* 14 Pick. 224.  Collins was in default in the payment of the instalments, and it was competent for the plaintiff to take possession of and transfer the presses to

the Collins Press Corporation, (*Hubbard* v. *Bliss,* 12 Allen, 590,) and, so far as appears, that was what was done. There was no dispute as to the facts, and the only ruling which the defendant asked for was that the court should rule that, upon all the evidence, the plaintiff could not recover. This the court rightly refused to do, and ordered a verdict for the plaintiff, to which the defendant excepted.

Upon the undisputed facts it seems to us that the ruling was clearly right. The plaintiff's rights were not affected by the omission of Collins, if it was an omission, to avail himself of the provisions of Pub. Sts. c. 192, § 13.

The Collins Press Corporation also defaulted in its payments. While the default continued, the plaintiff's agent entered and tagged the presses in question with the plaintiff's name. We think that this constituted a taking possession under the agreement, and that the subsequent conduct of the defendant in removing the tags and selling the presses under the mortgage, and purchasing them at the sale, constituted a wrongful interference with and unlawful detention of the plaintiff's property, and that the plaintiff could maintain replevin without any demand. *Salomon* v. *Hathaway,* 126 Mass. 482.

The defendant took nothing by its tender. In the view which we have taken of its rights, the tender was as if made by a stranger.

According to the view which we have taken, the refusal to direct a verdict, as well as directing one for the plaintiff, was right.

*Exceptions overruled.*