TAYLOR F. SMITH & another *vs.* BAY STATE SAVINGS BANK.

Suffolk.   January 28, 1909. — June 22, 1909.

Present: KNOWLTON, C. J., MORTON, HAMMOND, LORING, & BRALEY, JJ.

*Fixtures.   Real Property.   Personal Property.   Mortgage,* Of realty, Of personal property.

Whether an article annexed to a building by the owner of the building continues to be a chattel or becomes part of the realty so as to pass under a deed or a mortgage of it depends upon what was the intention of the owner when he annexed it as manifested by his acts.

At the trial of an action for the alleged conversion of a set of three bars used in the bar room of a hotel, it appeared that the owner of a parcel of real estate erected thereon a building to be used as a hotel and purchased the set of bars by a conditional sale, the title to them not to become his until the price was fully paid, and placed them in a room which he thereupon fitted up as a bar room. Shortly after the bars were so placed, he executed a mortgage of the realty to the defendant, which contained the usual description of real estate and no mention of the bars specifically. He thereupon used the room as a bar room and about six months later made the payment of the purchase price of them, and four months later still executed a mortgage of personal property to the plaintiff, specifically mentioning and including the bars. There was evidence tending to show that the back bar was in two parts, an upper and a lower, and that neither part was fastened to the realty, that the front bar was fastened by angle irons and wooden cleats screwed to the floor, that the working bar was attached to the front bar, and had various pipes which were fastened to water and drain pipes in the building and were detachable, that the bars were of the regular stock pattern, and could be removed easily through the doors of the building. The defendant foreclosed its mortgage on the realty and, the plaintiff subsequently foreclosing his, refused to give the plaintiff possession of the bars. *Held,* that whether the bars had become a part of the realty and therefore passed under the mortgage to the defendant depended upon what was the intention of the owner as manifested by his acts, which question was for the jury to determine.

TORT for the alleged conversion of three bars used in the bar room of a hotel.   Writ dated December 17, 1904.

The case was tried before *Sherman,* J.   Besides the facts stated in the opinion, it appeared from the report by the presiding judge

that it was " admitted for the purposes of this report that there had been a breach of the condition in the plaintiffs' mortgage, and that the plaintiffs had a right to possession of the articles in question if they were not real estate or held under defendant's mortgage, entry, or foreclosure.   That is, it was agreed between counsel at the trial, that, if these articles were personal property, the plaintiffs had a right to them unless held under defendant's mortgage, entry, or foreclosure ; but if they had become a part of the realty or held as aforesaid, the plaintiffs did not have a right to them ; and this was the question at issue in this case." Other facts are stated in the opinion.

The presiding judge ordered a verdict for the defendant and reported the case for determination by this court under the terms stated in the opinion.

The case was submitted on briefs.

*H. I. Cummings*, for the plaintiffs.

*J. B. Ratigan, C. J. O'Hara & J. E. Swift*, for the defendant.

LORING, J.   This is an action of tort for the conversion of an oak bar, a working bar and a back bar.   The following facts were not in dispute.

During the year 1899 one Pellett owned a lot of land in Southbridge and began the erection on it of a brick building three stories in height, to be used as a hotel.   On March 20, 1900, Pellett bought of one Spalt, " a maker of such articles," the three bars here in question, and also an ice box and " some other property," for $1,325.   The sale was an entire one and was conditioned on the whole purchase price being paid.   Pellett paid $445 in cash and gave two notes for $440 each, payable in June and September.   These were paid at maturity.   All the articles so purchased were placed in the bar room before April 26, 1900. On April 26, 1900, Pellett executed a power of sale mortgage on the real estate to the defendant to secure money borrowed of it.   This mortgage " was in the usual form and did not specifically mention the articles in question."   " At the date of the defendant's mortgage, the bar room, the office, and a small room that was attached to the bar room was practically finished, but the rest of the building was not.   After the articles in question had been put in the bar room there was practically no further work done in that room."

On May 7, 1901, the plaintiffs lent Pellett $1,629.15 on a mortgage of personal property, including the three bars here in question. There was a breach of this mortgage, and the plaintiffs were entitled to them unless they had become part of the realty and passed under the mortgage to the defendant.

Pellett used the room in which the three bars here in question were put as a bar room, from the time they were put in (in March or April, 1900) until May 1, 1902, when his license expired.

The defendant's mortgage was foreclosed on June 16, 1902.

On May 17, 1904, the defendant notified Pellett to remove his personal property. On June 7, 1904, the plaintiffs went to the premises to take out the articles covered by their mortgage. The defendant forbade the removal of the three bars. This action was brought on December 17, 1904, based on that as a conversion of them.

At the close of all the evidence the defendant's counsel requested the judge presiding at the trial to instruct the jury to return a verdict for the defendant on the ground "that there was no evidence which entitled the plaintiffs to go to the jury," and on the ground "that the articles in question had become so affixed to the freehold as to become a part of it, and there never having been any severance either by Pellett or anybody acting for him, within a reasonable time after he left it, there could be no action for conversion." The judge ruled that "independent of the question of severance," which he did not decide, "on all the evidence the plaintiffs were not entitled to go to the jury." The parties having agreed that, if the plaintiffs were so entitled, the Supreme Judicial Court should order judgment entered for the plaintiffs in the sum of $700, the judge directed the jury to return a verdict for the defendant under this agreement, to which ruling and direction the plaintiffs excepted. The jury returned a verdict for the defendant and, both parties agreeing thereto, the case was reported to this court; if on the report of the facts and evidence the rulings were right, "then judgment is to be entered on the verdict; otherwise judgment is to be entered for the plaintiffs in the sum of $700; or such other disposition may be made of the case as the Supreme Judicial Court shall order."

1. The defendant has contended that an action of trover does not lie for these bars which are in fact affixed to the freehold

although there is a right to sever them; and cites in support of that position *Guthrie* v. *Jones*, 108 Mass. 191 ; *Raddin* v. *Arnold*, 116 Mass. 270; *Brown* v. *Wallis*, 115 Mass. 156.   Those were cases where a tenant had annexed to the freehold a trade fixture during the term of his lease.   It was held in *Carpenter* v. *Walker*, 140 Mass. 416, affirming previous cases there cited, that in this Commonwealth articles annexed to the freehold by the owner which do not pass under a deed or mortgage as part thereof continue to be chattels.   It is hard to see why an action of tort for their conversion does not lie if that be so, even if it be now true that conversion does not lie for tenants' trade fixtures so long as they are not severed.   But we do not find it necessary to pass upon this because by the terms of the report we are of opinion that the ruling made by the presiding judge was not made as a ruling on the pleadings.

2.  We are of opinion that it could not be ruled as matter of law that the three bars had become part of the freehold.

Where the question is whether an article annexed to a building by the owner continues to be a chattel or becomes part of the real estate so as to pass under a deed or a mortgage of it, the point to be ascertained is the intention of the owner.   Was it his intention, in annexing the article to the real estate, permanently to increase the value of it even if the article can be removed without serious injury to the building or to the article, or was it his intention to annex it as a piece of furniture though more or less substantially fastened to the building?   See *Hook* v. *Bolton*, 199 Mass. 244, where the earlier cases are collected. The intention of the owner on which this question depends is not his secret, undisclosed intention, but his intention as manifested by his acts.   *Hopewell Mills* v. *Taunton Savings Bank*, 150 Mass. 519.

The question whether a chattel annexed by the owner continues to be a chattel is not the same as it is when the chattel is annexed by a tenant during the term of his lease.   Many articles annexed by a tenant can be removed by him which, if annexed by the owner, become part of the realty and pass under a deed or mortgage.   *Richardson* v. *Copeland*, 6 Gray, 536, 538.  *McConnell* v. *Blood*, 123 Mass. 47.   For that reason *Kimball* v. *Grand Lodge of Masons*, 131 Mass. 59, *Hanrahan* v. *O'Reilly*, 102 Mass. 201,

*Park* v. *Baker*, 7 Allen, 78, and *Cottrell & Sons Co.* v. *Carter, Rice & Co.* 173 Mass. 155, cited by the plaintiffs, are not in point.

There was not only a direct conflict between the evidence of the plaintiffs and that of the defendant as to how the bars were affixed to the building, and what the effect of removing them would be, but the evidence introduced by the plaintiffs was conflicting on many of the points on which that question depends.

The jury were warranted in making the following findings:

The back bar was about twenty-four feet long and eleven to twelve feet high. The lower part was used for storing goods. The upper part, which had a mirror in it and was for display, rested on the lower part. Although there was much evidence to the contrary given by witnesses put on the stand by the defendant, the jury were warranted in finding that it was not attached at all to the floor on which it stood nor to the wall which it covered.

The front bar was about twenty-six or twenty-seven feet long, and curved back for about two and a half feet at the ends. It was held in position by angle irons and wooden cleats screwed, not nailed, to the floor.

The working bar was attached to the front bar and was made of copper, brass and tin. It contained an ice box, wash basins, sink and drainer. The drainer and washing arrangements had pipes leading to barrels in the cellar, but the pipes were not attached to the building. The drainer could be taken off the bar by unscrewing the pipes, " and . . . the same would be true for separating all faucets and connections with the bar; namely, by unscrewing pipes." Pellett, called by the plaintiffs, testified on cross-examination that " there were quite a number of pipes running down from the front bar through the floor into the cellar, perhaps a dozen or fifteen; that one of them was a water pipe connecting with the town water, which was fastened on with a clamp, inside the bar; there was a drainage pipe running from the working bar right through the floor and fastened to the drainer and clamped on to the wall like any water pipe anywhere, but [they were] not soldered to the floor in any way; that none of the pipes were soldered to the floor, but were soldered to the couplings that went on to the drainer; that the dozen or fifteen pipes were all run from the drainer underneath the front bar."

" The bar," and as we understand it, the three bars, " as you would take it out would easily go through the doors that were there."

The room seems to have been finished with a wooden sheathing, and a rail about the height of the witness stand ; and above that " a metal sheathing," but the metal sheathing did not cover all the wall which was behind and covered by the back bar and was covered by it. It would seem that this sheathing was put on after the bar was set up, in spite of the statement in the undisputed facts that after the bars were put in practically no further work was done in the bar room.

There was evidence that the wall behind the refrigerator, which was one of the articles bought for $1,325 with the bars, was left unfinished as was the wall behind the back bar. This refrigerator had pipes running through the floor and was conceded to be the property of the plaintiffs and was taken away by them without objection.

The bar was an ordinary bar bought from a maker, that is to say, it could be found to be an article of regular stock pattern. That is of some importance. See *Wentworth* v. *Woods Machine Co.* 163 Mass. 28, 33. In that connection it is of importance that the bars could be carried out through the doors without their being enlarged.

If Pellett had given a mortgage back to secure the purchase price of the bars when he bought them, that would have been an act bearing on his intention. *Wentworth* v. *Woods Machine Co.* 163 Mass. 28, 33. The fact that the bars and the refrigerator and " some other property " not annexed to the building were bought on conditional sale for an entire price, in like manner has some bearing on the intention of the owner in annexing them to the building.

The fact that the working bar was connected with the town water is not conclusive. The same was true of the " twenty-four kitchen stoves put into twenty-four kitchens of twenty-four apartments in a tenement house by the owner of it," and yet it was held that it was a question for the jury whether they had or had not become part of the realty. *Jennings* v. *Vahey*, 183 Mass. 47. For like decisions see *Turner* v. *Wentworth*, 119 Mass. 459 ; *Hook* v. *Bolton*, 199 Mass. 244.

Whether machines weighing from three thousand to four thousand five hundred pounds, put in by the owner and screwed to the floor, are or are not chattels is for the jury.   *Wentworth* v. *Woods Machine Co.* 163 Mass. 28.   For similar cases see *Carpenter* v. *Walker,* 140 Mass. 416 ; *Maguire* v. *Park,* 140 Mass. 21 ; *Hubbell* v. *East Cambridge Five Cents Savings Bank,* 132 Mass. 447 ; *Southbridge Savings Bank* v. *Mason,* 147 Mass. 500. So as to a portable engine and boiler cast as one machine weighing five thousand six hundred pounds, which could be removed only by taking off the roof of the shed in which they were. *Carpenter* v. *Walker,* 140 Mass. 416.

The fact that the jury could have found that the back bar was in no way attached to the floor or to the wall was of itself enough to prevent the judge directing the jury to return a verdict for the defendant for all three bars.

But apart from that we have been referred to no case in Massachusetts which has gone so far as the rulings went in the case at bar.   *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519, went off on the ground that no inferences of fact can be drawn where a case is submitted on agreed facts, and that on the agreed facts it did not appear that the articles there in question were personal property as matter of law.   *McConnell* v. *Blood,* 123 Mass. 47, so far as the engine and boiler were concerned, seems to have been decided on the same ground.   The machines in *Smith Paper Co.* v. *Servin,* 130 Mass. 511, were specially adapted to the factory in question, and were not like regular stock machines.   There is a case in Minnesota which sustains the ruling made in this case in the Superior Court, namely, *Woodman* v. *First National Bank,* 48 Minn. 67.   The general rule in Minnesota is there stated to be " that all annexations to the realty pass by the deed or mortgage unless excepted in express terms from the conveyance."   The rule in Massachusetts is not so broad as that.   Finally, as was said by this court in *Carpenter* v. *Walker,* 140 Mass. 416, 420 : " It is more important to respect decisions upon a question of property than to preserve a simple test."

Under the circumstances we think that the case should go back for a new trial.

*So ordered.*