MEDFORD TRUST COMPANY *vs.* PRIGGEN STEEL GARAGE COMPANY.

PRIGGEN STEEL GARAGE COMPANY *vs.* MEDFORD TRUST COMPANY.

Middlesex. October 9, 1930. — November 26, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, SANDERSON, & FIELD, JJ.

*Real and Personal Property. Sale,* Conditional. *Mortgage,* Of real estate. *Practice, Civil,* Requests, rulings and instructions, Findings by judge. *Evidence,* Of intent, Presumptions and burden of proof. *Estoppel.*

A portable steel garage was not within the scope of G. L. c. 184, § 13, before its amendment by St. 1929, c. 261.

At the trial together in a district court of two actions of tort, each for conversion of a portable steel garage, there was evidence that each of two lots of land was made subject to a duly recorded construction mortgage, one of the provisions of which was that the mortgagee would advance a certain sum of money for a garage thereon; that the owner thereafter, in 1926, purchased on conditional sale two portable steel garages; that one of the garages was placed on each lot, resting on concrete piers embedded in the ground, which were not constructed by the vendor; that one of the garages was not bolted to the piers and had no floor; that the other garage was fastened to the

piers by removable nuts operated on threaded bolts; that a cement floor was laid by the vendee in the second garage after its construction; that it would be necessary to break the floor slightly to remove that garage; that the mortgagee then made, and the owner accepted, an advance on each lot in the sum specified in the mortgage; that the conditional sale contracts were not recorded and did not come to the knowledge of the mortgagee; that the mortgagee subsequently foreclosed the mortgages; and that the owner defaulted in his payments under the conditional sale contracts. It did not appear that the vendor of the garages made any representations to the mortgagee as to the nature of the garages, or that the vendor had knowledge of the advances made by the mortgagee. The trial judge, after taking a view, ruled, as to each garage, that title remained in the vendor and that it was not part of the realty, but personal property. *Held*, that

(1) It could not properly have been ruled as a matter of law either that the garages were realty or that they were personalty: their character was a mixed question of law and fact depending partly on the intention of the landowner;

(2) The rulings by the trial judge must be construed as findings of fact and rulings;

(3) On the evidence, the findings, that each garage did not become a part of the realty, were warranted: the acceptance of the advances by the owner, although evidence to show that he intended to treat the garages as realty, was not controlling;

(4) The nature of the garages was not changed by the foreclosure of the mortgage;

(5) Nothing appeared to show that the vendor was estopped to assert title to the garages;

(6) The findings that title to the garages remained in the vendor were warranted.

Two ACTIONS OF TORT. Writs in the Third District Court of Eastern Middlesex dated November 16, 1928.

The actions were tried together in the District Court. Material evidence and rulings by the trial judge are stated in the opinion. He found for the defendant in the first action and for the plaintiff in the second action in the sum of $210. Reports of the actions to the Appellate Division for the Northern District were dismissed. Medford Trust Company appealed in each action.

*R. Walsworth*, for Medford Trust Company.

*E. R. Sparrow*, for Priggen Steel Garage Company.

FIELD, J. These two actions of tort, each for the conversion of a portable steel garage, were brought in the District Court, one by the Medford Trust Company against

the Priggen Steel Garage Company, and the other by the Priggen Steel Garage Company against the Medford Trust Company. There was a finding for the garage company in each case, and a report to the Appellate Division, which was dismissed. The trust company appealed.

On December 13, 1926, the garage company made a contract in writing with the owner of certain lots of land in Winchester, title to which stood in the name of his daughter — it is not contended that anything turns upon the fact that title was so held — " to deliver and install ten clapboard steel garages, size 11 x 18 on ten lots of land," including " Lot No. 21," involved in the case brought by the trust company, and " Lot No. 22," involved in the case brought by the garage company. This contract provided " that the title to all material and fixtures covered by this contract shall remain in the vendor until all payments called for by the contract have been made, and that upon the failure of the vendee to make any payment called for by the contract, the vendor may remove all such material or fixtures from whatever premises they may be placed upon."

When the conditional sale contract was made each lot here involved was subject to a construction mortgage, duly recorded, to the trust company which, by the schedule of payments agreed upon, was to advance $300 for a garage thereon. The trust company never received notice " of the terms and conditions of the sale" of the garages "as between the then land owner " and the garage company. The contract was not recorded in the registry of deeds and no notice thereof was given to the trust company by either of the parties thereto. Soon after the contract was made the garage company erected a garage on each of these lots and the trust company, relying on the erection thereof, advanced $300 on account of each garage.

The trial judge states in his report as to the garage on " Lot No. 21," that it " was a metal garage and was placed on six concrete piers embedded in the ground and projecting about six inches above the ground, which piers were erected by another contractor. This garage was not bolted

down to the piers. It was simply resting on the piers and no floor was ever laid . . . This garage was not physically attached to the realty in any way." He states in respect to the garage on " Lot No. 22 " that it was placed on concrete piers, as in the other case, that " the sills of the garage were fastened down to each pier by a removable nut which operated on a threaded bolt embedded in each pier," that " Sometime after the garage was erected the owner had a concrete floor put in by another contractor, which cemented in part of the lower sill of the garage " and that " To remove the garage it was necessary to break the cement floor slightly to release the sills."

In June, 1928, the trust company foreclosed its mortgages on the lots in question and became the owner of the land. Previously, the garage company, by direction of the landowner, had removed the garage from " Lot No. 21," for nonpayment of the purchase price. On November 12, 1928, the garage company, when attempting to remove the garage from " Lot No. 22," for nonpayment, with the permission, given before the foreclosure, of the person in whose name the title then stood, was prevented from doing so by the duly authorized agent of the trust company.

The judge took a view of the premises and of the garage which had been removed from " Lot No. 21." Each report states that it " contains all the evidence material to the questions reported."

In each case the judge ruled, at the request of the garage company, that " By the contract . . . title to the garage remained " in the garage company, and that the " garage . . . was never part of the realty " but " was personal property and a removable chattel," and denied requests by the trust company for rulings setting forth the contrary view in various aspects. At the request of the garage company, he ruled further in the case involving " Lot No. 22," that the " owner gave . . . [the garage company] permission to remove the garage," that the " foreclosure of the mortgage . . . did not make the garage realty " and that " On all the evidence " the trust company was " liable for conversion."

These cases must be considered apart from G. L. c. 184, § 13. Before its amendment by St. 1929, c. 261, it applied only to conditional sales of "heating apparatus, plumbing goods, ranges or other articles of personal property," "other articles of personal property" meaning "property of the same kind or of the same general description" as the articles specifically mentioned. *Babcock Davis Corp.* v. *Paine,* 240 Mass. 438, 441. *J. H. Gerlach Co. Inc.* v. *Noyes,* 241 Mass. 69, 73. See also *Automatic Sprinkler Corp.* v. *Rosen,* 259 Mass. 319, 322; *American Soda Fountain Co.* v. *Parsons,* 32 Fed. Rep. (2d) 737, 739. Portable steel garages are not such property. St. 1929, c. 261, which extends the provisions of G. L. c. 184, § 13, to "buildings of wood or metal construction of the class commonly known as portable or sectional buildings," was not passed until after these actions were brought. We need not determine whether G. L. c. 184, § 13, as amended, would have been applicable to the facts in these cases if St. 1929, c. 261, had been passed at any earlier time.

Whether, as between the trust company and the garage company, the garages were personal property or parts of the realty was a mixed question of law and fact (*Henry N. Clark Co.* v. *Skelton,* 208 Mass. 284, 286, *Automatic Sprinkler Corp.* v. *Rosen,* 259 Mass. 319, 323), "depending for its answer in part upon the intention of . . . [the landowner] as manifested by his acts." *Wentworth* v. *S. A. Woods Machine Co.* 163 Mass. 28, 33. *Smith* v. *Bay State Savings Bank,* 202 Mass. 482. *Stone* v. *Livingston,* 222 Mass. 192, 194, 195. Such a garage does not fall on the one hand within the class of property which is real estate as matter of law, because "so affixed" thereto "that its identity is lost, or so annexed that it cannot be removed without material injury to the real estate or to itself," nor, on the other hand, within the class of articles which are personal property as matter of law because "manifestly furniture as distinguished from improvements." *Stone* v. *Livingston, supra.* Compare *Ferdinand* v. *Earle,* 241 Mass. 92, 94, 96.

The so called "rulings" of the trial judge obviously

were findings and rulings. Compare *Robinson* v. *Pero,* 272 Mass. 482, 484. His finding, expressed in various forms, that the garages were not parts of the realty, means that the question of fact involved was decided against the trust company. Compare *Automatic Sprinkler Corp.* v. *Rosen, supra.* We cannot say that this finding was not warranted. We do not know precisely what was disclosed by the view taken by the judge. There is nothing in the report in either case to indicate that the garages were specially designed for use on these premises or were peculiar in pattern, nor that the piers were not as well adapted to support other garages. The view may have shown the contrary. The conditional sale contract gives some indication that the garages were of a stock pattern. It could have been found also that they were removable easily without injury to themselves or to the piers upon which they rested. It is stated that the garage erected on " Lot No. 21 " merely rested upon concrete piers and " was not physically attached to the realty in any way," and that, though the sills of the other garage resting upon concrete piers " were fastened down to each pier by a removable nut . . . on a threaded bolt embedded in each pier " and the concrete floor, put in after the garage was erected, " cemented in " part of the lower sill, it was necessary to break the floor only " slightly " to remove the garage. The physical facts, set out in the report as evidence or subsidiary findings, furnish some basis for the inference, which, however, was not required as matter of law, that the owner in placing the garages upon the land did not intend to make them a permanent part of it. See *Stone* v. *Livingston, supra.* See also *Carpenter* v. *Walker,* 140 Mass. 416, 420; *Smith* v. *Bay State Savings Bank, supra.* Furthermore, the fact that the garages were bought on conditional sale, even if unknown to the mortgagee, had some tendency to show that the landowner did not intend them to remain permanently (*Jennings* v. *Vahey,* 183 Mass. 47, 49, *Smith* v. *Bay State Savings Bank,* 202 Mass. 482, 487, see also *Stone* v. *Livingston, supra*) though, under our decisions, if they were found to be parts of the realty, an

agreement that they should be treated as personalty or that title thereto should remain in the vendor would not bind a prior nonassenting mortgagee. *Clary* v. *Owen,* 15 Gray, 522. *Hunt* v. *Bay State Iron Co.* 97 Mass. 279. *Hopewell Mills* v. *Taunton Savings Bank,* 150 Mass. 519, 521. *Tarbell* v. *Page,* 155 Mass. 256. The schedule of advances agreed upon between the mortgagee and the land-owner, including $300 for each garage, and the acceptance of such advances by the landowner, though evidence tending to show that he intended to treat the garages as realty, were not necessarily controlling. Nor was the nature of the garages changed by the foreclosure of the mortgages.

It does not appear that the garage company made or assented to any representation to the trust company as to the nature of the garages by which it was estopped to assert its title thereto. Compare *J. H. Gerlach Co. Inc.* v. *Noyes,* 241 Mass. 69, 73, 74; *S. C.* 251 Mass. 558, 565, 566. Even if the acceptance by the landowner of advances from the trust company, on account of the garages, amounted to a representation by him that the garages were parts of the realty, it does not appear that the garage company knew of these advances.

If, as the trial judge found justifiably, the garages were not parts of the realty, the findings that title to them remained in the garage company also were warranted. On these findings the removal of the garage from " Lot No. 21 " by the garage company was not a conversion and the garage company was entitled to reclaim the garage on " Lot No. 22." The trust company does not contend that in this state of the title the trial judge was not warranted in finding that its action in preventing the removal of the garage from " Lot No. 22 " by the garage company amounted to a conversion.

*Order dismissing report affirmed.*