MURPHY DOOR BED COMPANY *vs.* NEW ENGLAND BOND AND MORTGAGE COMPANY.

. Suffolk. March 9, 1931. — June 23, 1931.

Present: RUGG, C.J., CROSBY, PIERCE, WAIT, & SANDERSON, JJ.

*Real or Personal Property. Mortgage,* Of real estate. *Sale,* Conditional.

At the hearing of an action by the vendor under a contract of conditional sale of certain beds installed in a building against a purchaser of the building at a sale in foreclosure of a mortgage of the building and "fixtures of whatever kind or nature at present contained" therein, which was given following the installation of the beds, it appeared that the defendant refused to deliver the beds to the plaintiff in accordance with a demand made following a default under the contract of conditional sale, but the judge found, on evidence warranting the finding, "that the premises where the beds were installed were expressly designed for the permanent retention and use of the beds and by their installation the beds became fixtures," and found for the defendant. *Held,* that no error was shown.

TORT for conversion of fifteen "Murphy-in-a-Door Beds." Writ in the Municipal Court of the City of Boston dated December 2, 1929.

In the Municipal Court the action was heard by *Brackett,* J.

It appeared that the beds were sold by the plaintiff to the owner of a building under a contract of conditional sale, and that several days after they were installed the vendee mortgaged the premises to the defendant, the mortgage specifically including "fixtures of whatever kind or nature at present contained" in the building. Subsequently the mortgage was foreclosed, the defendant purchased at the sale, and refused a demand, following a default under the contract of conditional sale, to deliver the beds to the plaintiff.

There was evidence "that the beds were affixed to the building as follows: That there was a floor socket and a jamb socket attached to the building; that the floor socket was attached to the floor at the point where the door jamb and the floor met, and that this floor socket was attached to the floor by four flat head screws, and that about eighteen inches up on the door jamb a jamb socket was attached to the face of the jamb with four long flat head wood screws; that the bed consisted of three parts, the jamb frame, the head and foot end, and the spring bottom; that the jamb frame had two hinge arms, an upper and a lower, and that the upper hinge arm set into the socket called the jamb socket, and that the lower hinge arm set into the floor socket; that the head and foot end were attached to the jamb frame by bolts, and that the spring bottom was then set upon the head and foot end; that each of the rooms where the beds were installed had an alcove or a closet which was approximately three feet in depth and seven feet in width, and that it was necessary to go through this alcove to the bathroom, there being on the end of each alcove a door which entered into the bathroom; that the bed was so constructed that the upper and lower hinge arms of the jamb frame when inserted into the floor socket and the jamb socket acted as hinges and the bed could swing into

the alcove, so that it would not be in any part of the room; that there was space which could be used for a closet when the bed was swung into the alcove, and sufficient room was allowed so that a clear passage was had to and from the room through the alcove into the bathroom; that the operation of the bed was as follows: No part of the bed was in contact with the building except the upper and lower hinge arms which were inserted in the floor socket and the jamb socket, and the bed was vertical when it was in the alcove; the floor socket and the jamb socket together with the hinge arms on the jamb frame acted as a hinge and the bed in its vertical position could be swung from the alcove out into the room and then by pulling on the foot of the bed it would lower and set firmly on the floor."

The judge found "as a fact that the premises where the beds were installed were expressly designed for the permanent retention and use of the beds and by their installation the beds became fixtures"; refused to rule that the "beds remained personal chattels or mere furniture and did not become a part of the realty," and that they "remained the property of the plaintiff as against the defendant mortgagee until such time as the full purchase price had been paid"; found for the defendant, and reported the action to the Appellate Division. The report was ordered dismissed. The plaintiff appealed.

The case was submitted on briefs.

*P. G. Ryan & J. B. Rintels*, for the plaintiff.

*P. R. Ammidon & G. S. Ryan*, for the defendant.

WAIT, J. The principles of law which govern this case are stated with clarity and with ample citation of authorities in *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349. Restatement is unnecessary. The beds in question could be found to be, in fact, articles of household furnishing intended by the owner of the real estate who installed them in his apartment house to form permanently part of the completed dwelling. The trial judge so found on the evidence. That finding is final.

The conditional sale contract was made and the beds were installed before the mortgage of the realty was ex-

ecuted. The beds passed as fixtures to the mortgagee. We need not discuss the rulings requested but not given. They were rendered immaterial or inapplicable by the finding of fact that the beds were fixtures.

The Appellate Division was right. Its order dismissing the report is

*Affirmed.*