ASSESSORS OF SPRINGFIELD *vs.* COMMISSIONER OF CORPO-
RATIONS AND TAXATION.

Suffolk. November 29, 1946. — April 5, 1947.

Present: FIELD, C.J., LUMMUS, QUA, DOLAN, & SPALDING, JJ.

*Taxation,* Personal property, tax: machinery; Telephone company;
Foreign corporation. *Corporation,* Foreign corporation. *Telephone
Company. Words,* "Manufacture."

The production and transmission of artificial sound waves by a telephone
company in the operation of its system are not "manufacture" within
G. L. (Ter. Ed.) c. 59, § 18, Second, as appearing in St. 1936, c. 362,
§ 2; therefore the company's telephone instruments, poles, wires and
equipment used in producing and transmitting such sound waves,
other than its machinery used for converting and generating electricity
for its system, do not constitute "machinery employed in . . . manu-
facture" within the statute.

The phrase "other activity requiring the performance of labor", appear-
ing in the definition of a foreign corporation in G. L. (Ter. Ed.) c. 63,
§ 30, cl. 2, as appearing in St. 1943, c. 459, § 1, means an activity
similar to "the construction, erection, alteration or repair of a build-
ing, bridge, railroad, railway or structure of any kind, or . . . the
construction or repair of roads, highways or waterways"; and a foreign
telephone company not engaged in any such activity, although its
activities did require the performance of labor, was not within that
definition, and its equipment and apparatus were not taxable under
the provision of G. L. (Ter. Ed.) c. 59, § 18, Second, as appearing in
St. 1936, c. 362, § 2, for the assessment of the "machinery [of a foreign
corporation as so defined] used in the conduct of . . . [its] business."

APPEAL from a decision by the Appellate Tax Board.

The case was submitted on briefs.

*S. A. Moynahan,* City Solicitor, & *C. D. Sloan,* Associate
City Solicitor, for the assessors of Springfield.

*C. A. Barnes,* Attorney General, & *W. G. Perrin,* Assist-
ant Attorney General, for the Commissioner of Corpora-
tions and Taxation.

*W. M. Hogan, Jr.,* & *H. P. Moulton,* by leave of court,
submitted a brief as amici curiae.

SPALDING, J. This is an appeal by the board of assessors
of the city of Springfield (herein called the assessors) from

a decision of the Appellate Tax Board (herein called the board) under G. L. (Ter. Ed.) c. 58A, § 13, as amended. The commissioner of corporations and taxation (herein called the commissioner) under the provisions of G. L. (Ter. Ed.) c. 59, § 39, as amended, on February 12, 1945, certified to the assessors the valuation at which they should assess (as of January 1, 1945) the machinery, poles, wires and underground conduits, wires and pipes of the New England Telephone and Telegraph Company (herein called the taxpayer) situated in the city of Springfield. The assessors, claiming to be aggrieved by the commissioner's determination, applied to the board to obtain a higher valuation than that fixed by him; they also sought to have him include in his valuation other property owned by the taxpayer. The decision of the board was in favor of the commissioner.

Pertinent facts found by the board may be summarized as follows: The taxpayer, a foreign corporation, with a usual place of business in this Commonwealth, filed with the commissioner on February 1, 1945, as required by G. L. (Ter. Ed.) c. 59, § 41, as amended, a return showing the cost, as of December 1,. 1944, of such of its machinery, poles, wires and underground conduits, wires and pipes, as it deemed was locally taxable in Springfield.[1] The machinery included in the return is power machinery and apparatus located in the taxpayer's central office and used in the conversion of electric power purchased by it into direct current of proper voltage for use in its telephone service, and all emergency standby equipment used for the initial generation of electricity in case of outside power failure.

Thereafter the commissioner in accordance with the provisions of G. L. (Ter. Ed.) c. 59, § 39, as amended, certified to the assessors the valuation at which they should

---

[1] The return disclosed the following:

| | |
|---|---|
| Overhead construction | $481,146 96 |
| Underground construction | 2,795,993 63 |
| Machinery | 83,911 22 |
| Total | $3,361,051 81 |

assess, as of January 1, 1945, the machinery, poles, wires and underground conduits, wires and pipes of the taxpayer. This valuation was as follows:

| | | |
|---|---|---|
| Poles, wires and underground conduits, wires and pipes . . . . . . . . . | $2,785,550 | 00 |
| Machinery . . . . . . . . | 71,300 | 00 |
| Total . . . . . . . . . | $2,856,850 | 00 |

It was arrived at by accepting as correct the cost or book value set out in the taxpayer's return and deducting therefrom fifteen per cent for depreciation. The taxpayer's central office equipment, in addition to the conversion and generating machinery valued by the commissioner, included the following: aisle lighting equipment, balconies for distributing frames, connector banks, selector banks, batteries, battery cabinets, call registers, carrier equipment, carrier line filters and circuit breakers.

The board made detailed findings describing the functioning of the taxpayer's telephone system. They need not be recited in full. In substance they were as follows: In the central exchange there is a huge battery upon which fundamentally the electric current is drawn for the operation of the system. This battery is charged by motor driven charging generators. The current for the motors which operate these generators is purchased on a two hundred eight volt circuit of alternating current from the Western Massachusetts Electric Company. The generators produce direct current of two different kinds — one of twenty-four volts and one of forty-eight volts. Part of this current goes into the battery to keep it constantly charged so that it will "be ready to stand by in the event of a power failure." The current not used for the battery "goes through the system" and furnishes the electricity necessary for its operation. "Electricity, in other words, is converted into a type that the telephone company can use." The electricity thus generated is "modulated for the distribution of telephone service to the consumer . . . [and] is needed to operate the ringing machinery of the system. It is all one

system and to operate the service it is necessary to have all the lines operating from a central exchange and powered with electric power." When a person uses the system to communicate with another, his sound waves are transferred into variable electric currents which in turn are changed back into artificial sound waves in such a way that the characteristics of the voice of the speaker are carried along to the person receiving the message.

The assessors contend that the commissioner's valuation of the taxpayer's central office equipment should not have been limited to the conversion and generating machinery but should also have included the other equipment in the central office described above, and all of the taxpayer's telephone instruments, teletypewriter units, and private branch exchanges in Springfield, together with all its poles and wires, or so called aerial construction, located on public ways in that city. (It has not been argued that the valuations fixed by the commissioner were improper with respect to the property valued.) In support of their contention the assessors argue (1) that the omitted property is "machinery" and as such is taxable under G. L. (Ter. Ed.) c. 59, § 39, as amended; (2) that, if not taxable as "machinery" under § 39, it is nevertheless taxable locally as "machinery employed in any branch of manufacture" under G. L. (Ter. Ed.) c. 59, § 18, Second, as amended; and (3) that, if neither of these propositions is sound, such property is nevertheless "machinery used in the conduct of . . . [its] business" and hence taxable under G. L. (Ter. Ed.) c. 59, § 18, Second.

1. General Laws (Ter. Ed.) c. 59, § 39, as amended, provides: "The valuation at which the machinery, poles, wires and underground conduits, wires and pipes of all telephone and telegraph companies shall be assessed by the assessors of the respective towns where such property is subject to taxation shall be determined annually by the commissioner." This section imposes no tax on the classes of property therein enumerated, but, in conjunction with the three following sections (40, 41 and 42), prescribes the procedure by which such property, to the extent that it is subject to

local taxation under other statutory provisions, shall be valued for assessment. The assessors rely on *Hilliard* v. *Fells·Ice Co.* 200 Mass. 331, but that decision, construing a different statute, is so obviously distinguishable that further discussion is not required.

2. To determine what machinery of the taxpayer is locally taxable it is necessary to turn to G. L. (Ter. Ed.) c. 59, § 18, Second, as appearing in St. 1936, c. 362, § 2, which, so far as here material, provides: "Machinery employed in any branch of manufacture . . . or, in the case of domestic business and foreign corporations as defined in section thirty of chapter sixty-three, machinery used in the conduct of the business, shall be assessed where such machinery or tangible personal property is situated to the owner or any person having possession of the same on January first." If the omitted property described above was "machinery employed in any branch of manufacture," it is, as the commissioner concedes, taxable locally and should have been included in the property valued by him. The board, however, found that, in so far as it was a question of fact, this property was not "machinery employed in any branch of manufacture." Since the board's decision is "final as to findings of fact," it must stand unless vitiated by error of law in an issue of law raised before the board. G. L. (Ter. Ed.) c. 58A, § 13. *Commissioner of Corporations & Taxation* v. *Boston Edison Co.* 310 Mass. 674, 676. *De Cordova* v. *Commissioner of Corporations & Taxation*, 314 Mass. 371, 374.

In our opinion this finding reveals no error of law. The commissioner's valuation, as previously stated, included the apparatus at the central office used in the conversion and generating processes described above, and no question is presented as to them. But the assessors argue that the taxpayer generates its own electricity which in turn is used to furnish power to its lines; that thereafter by a series of complicated processes the electricity converts human sound waves into artificial sound waves; and that these sound waves, although intangible are nevertheless a manufactured product. Thus it is argued that all of the taxpayer's prop-

erty and equipment which are used in the production and transmission of these artificial sound waves are one big manufacturing machine and hence are "machinery employed in . . . [a] branch of manufacture."

What is included within the word "manufacture" has been considered by this court a number of times. [1] In *Boston & Maine Railroad* v. *Billerica*, 262 Mass. 439, it was said by Rugg, C. J.: "Involved in the conception of manufacture is the implication of change wrought through the application of forces directed by the human mind, which results in the transformation of some preëxisting substance or element into something different, with a new name, nature or use" (pages 444–445). A somewhat similar definition will be found in the recent case of *Commissioner of Corporations & Taxation* v. *Assessors of Boston, ante,* 90, 94. Such definitions are not intended to furnish a magic formula by which every case may be decided but are to be treated rather as practical working guides. Between what is clearly manufacturing and what is not lies a penumbral zone in which classification is often difficult and definitions are not particularly helpful. But the present case is not of that sort. To say that the artificial sound waves by which messages are transmitted are a manufactured product so as to make the equipment producing them "machinery employed in . . . [a] branch of manufacture" would be giving the words of the statute a strained and unusual meaning. If the transmission of intelligence through the medium of a news bulletin is not manufacturing (*Barron* v. *Boston,* 187 Mass. 168), it is difficult to see how it is manufacturing when done through a telephone system. We should have supposed that this was obvious, and we have discussed it only because the question has been pressed upon us with great earnestness by the assessors.

The fact that the taxpayer operates machinery for the

---

[1] See *Dudley* v. *Jamaica Pond Aqueduct Corp.* 100 Mass. 183; *Byers* v. *Franklin Coal Co. of Lykens Valley,* 106 Mass. 131; *Hittinger* v. *Westford,* 135 Mass. 258, 262; *Ingram* v. *Cowles,* 150 Mass. 155, 157; *Wellington* v. *Belmont,* 164 Mass. 142, 143; *Barron* v. *Boston,* 187 Mass. 168, 171–172; *Coffin* v. *Artesian Water Co.* 193 Mass. 274, 276; *Commonwealth* v. *Green,* 253 Mass. 458, 459.

generation of its own electricity and for the conversion of purchased electricity does not make its entire plant including poles and wires on public ways "one great integral machine" within the principles stated in *Commonwealth* v. *Lowell Gas Light Co.* 12 Allen, 75, 78, cited by the assessors. In that case the taxpayer was engaged in the business of manufacturing gas and distributing it to its customers. The issue was whether or not, for the purpose of taxing the excess of the market value of its stock over the value of its real estate and machinery, the mains and pipes were "machinery," and it was held that they were, since they were part of the apparatus necessary to distribute the gas to the customers. There is plainly a distinction between equipment used to convey gas (a manufactured product) to the consumer and that used, as here, for the transmission of intelligence. See *Dudley* v. *Jamaica Pond Aqueduct Corp.* 100 Mass. 183, 184.

3. The assessors further contend that the omitted property should have been valued by the commissioner by reason of G. L. (Ter. Ed.) c. 59, § 18, Second, which provides that in the case of a foreign corporation as defined in "G. L. (Ter. Ed.) c. 63, § 30, cl. 2," the "machinery used in the conduct of . . . [its] business" shall be taxed where it is situated. Section 30, cl. 2, as appearing in St. 1943, c. 459, § 1, defines "foreign corporations" as "every corporation, association or organization established, organized or chartered under laws other than those of the commonwealth, for purposes for which domestic corporations may be organized under chapter one hundred and fifty-six, which has a usual place of business in this commonwealth, or is engaged here, permanently or temporarily, in the construction, erection, alteration or repair of a building, bridge, railroad, railway or structure of any kind, or in the construction or repair of roads, highways or waterways, or in any other activity requiring the performance of labor," with exceptions not here material. The taxpayer is a foreign corporation organized under the laws of New York, and the assessors concede that it was not organized for a purpose for which a domestic corporation may be organized under

c. 156.[1] It is also conceded that the taxpayer was not engaged here, permanently or temporarily, in the construction, erection, alteration or repair of a building, bridge, railroad, highways or waterways. The assessors argue that, if the taxpayer is a foreign corporation, even though not organized for a purpose permitted by c. 156, and is engaged in an "activity requiring the performance of labor," the machinery used in the conduct of its business may be taxed locally. It may be, as the board held, that the foreign corporations defined by G. L. (Ter. Ed.) c. 63, § 30, cl. 2, encompass only those which are organized for purposes authorized by c. 156 and which in addition either (1) have a usual place of business in the Commonwealth or (2) are engaged in one of the enumerated classes of construction work or other activity requiring the performance of labor. But we need not decide that. Assuming, without deciding, that the construction placed upon the statute by the assessors is correct, the facts here do not bring the taxpayer within its scope. It is true that the board found that many of the taxpayer's employees were engaged in activities requiring the performance of labor. But the words "other activity requiring the performance of labor" cannot be isolated from the rest of the statute; they must be read in conjunction with the language immediately preceding that general phrase, namely, "engaged . . . in the construction, erection, alteration or repair of a building, bridge, railroad, railway or structure of any kind, or in the construction or repair of roads, highways or waterways." So read, the phrase must be construed to mean an activity of a similar nature. This is an application of the maxim noscitur a sociis. *Commonwealth* v. *Dejardin*, 126 Mass. 46, 47. *Babcock Davis Corp.* v. *Paine*, 240 Mass. 438, 440–441. *Medford Trust Co.* v. *Priggen Steel Garage Co.* 273 Mass. 349, 353. *Wellesley College* v. *Attorney General*, 313 Mass. 722, 727–728. *Becker Transportation Co. Inc.* v. *Department of Public Utilities*,

---

[1] In § 6 of that chapter it is provided that corporations may be organized "for any lawful purpose not excluded by section two," but § 2 specifically excludes telephone companies.

314 Mass. 522, 526.   Clearly the taxpayer was not engaged in such an activity.

The assessors rightly do not contend here, as they did before the board, that the poles of the taxpayer together with the wires thereon erected on public ways were subject to local taxation under G. L. (Ter. Ed.) c. 59, § 18, Fifth, which provides that "underground conduits, wires and pipes laid in public ways . . . and *poles,* underground conduits and pipes, *together with the wires thereon or therein,* laid in or *erected upon private property* . . . by any corporation . . . shall be assessed to the owners thereof in the towns where laid or erected" (emphasis supplied).   It is to be noted that the statute makes no provision for the taxation of poles with the wires thereon erected on public ways but taxes only those located on private property. [1]

The questions of law discussed above were raised before the board by various requests for rulings and are brought here by specific assignments of error.   These requests and assignments have been disposed of by what has been said, and separate discussion of them is not required.   Since the decision of the board reveals no error of law, the order must be

*Decision for commissioner.*

---

[1] The commissioner included in his valuation the poles and wires of the taxpayer which were located on private property.