**ALLIED FOODS, INC.,**

v.

**The SCHOOL DISTRICT OF THE CITY OF SCRANTON, and The City of Scranton, Appellants.**

Commonwealth Court of Pennsylvania.

Argued Dec. 6, 1994.

Decided Feb. 1, 1995.

Paul A. Kelly, Jr., for appellants.

Robert Mazzoni, for appellees.

Before DOYLE and KELLEY, JJ., SILVESTRI, Senior Judge.

SILVESTRI, Senior Judge.

The School District of the City of Scranton and the City of Scranton (collectively Appellants) appeal an order of the Court of Common Pleas of Lackawanna County (trial court) that granted declaratory judgment in favor of Allied Foods, Inc. (Allied) having determined that Allied was exempt from business privilege and mercantile tax imposed pursuant to The Local Tax Enabling Act[1] (Act).

---

1. Act of December 31, 1965, P.L. 1257, *as amended,* 53 P.S. §§ 6901–6930.13.

In 1989, Allied began operation of a wholesale meat processing and packing facility in the City of Scranton. (Complaint ¶¶ 1 and 4, R.R. 2a–3a.) By assessment letter dated June 27, 1991, the Appellant's tax administrator informed Allied that it had a liability of $37,039.90 for business privilege and mercantile taxes for the tax years 1989 through 1991. (R.R. 6a.) On September 6, 1991, Allied filed a complaint seeking declaratory judgment asserting that it was exempt from the aforesaid taxes for the following reasons: 1) it qualifies as a manufacturer of goods,[2] and 2) most, if not all, of its sales are outside of the territorial limits of the Commonwealth. (Complaint ¶ 7, R.R. 4a.)

Following a non-jury trial, the trial court, by order dated December 28, 1993, granted declaratory judgment in favor of Allied and against the Appellants. The trial court concluded that Allied is a manufacturing concern

and therefore exempt from the taxes in question.[3] The trial court determined that a review of the evidence presented regarding Allied's production demonstrates that Allied satisfied the four established criteria for defining a manufacturer.[4] In so doing, the trial stated as follows:

> [h]ere Allied Foods takes a raw product incapable of consumption or use, and reduces that product to food products; then through the use of its adaptations and activities Plaintiff vacuum packs the various products for subsequent distribution in the market place. The Plaintiffs essentially transform the calf carcass into useful food product through the application of skill, labor and the use of sophisticated machinery.

■ On appeal to this Court,[5] the Appellants assert that the trial court erred in

---

The School District of the City of Scranton's authority to impose mercantile license taxes is set forth in the Public School Code of 1949 (School Code), Act of March 10, 1949, P.L. 30, *as amended*, 24 P.S. §§ 1–101—27–2702 and 24 P.S. § 582.4.

**2.** Section 2 of the Act provides, in pertinent part, that local authorities shall not have the authority to:

> .    .    .    .    .
>
> (4) To levy, assess and collect a tax on goods and articles *manufactured in such political subdivision or on the by-products of manufacture*, or on minerals, timber, natural resources and farm products produced in such political subdivision or on the preparation or processing thereof for use or market, or on any privilege, act or transaction relating to the business of manufacturing, the production, preparation or processing of minerals, timber and natural resources, or farm products, by manufacturers, by producers and by farmers with respect to the goods, articles and products of their own manufacture, production or growth, or on any privilege, act or transaction relating to the business of processing by-products of manufacture, or on the transportation, loading, unloading or dumping or storage of such goods, articles, products or by-products; except that local authorities may levy, assess and collect taxes on the occupation, occupational privilege, per capita and earned income or net profits of natural persons engaged in the above activities whether doing business as individual proprietorship or as members of partnerships or other associations; ... (Emphasis added.)

53 P.S. § 6902(4). *See also* 24 P.S. § 582.1(4) which by definition excludes from mercantile license tax one who sells his own manufactures.

**3.** Having determined that Allied is entitled to a manufacturing exemption, the trial court did not address Allied's second contention that it is not liable for the aforesaid taxes on the basis that most of its sales are outside the territorial limits of the Commonwealth.

**4.** The trial court relied on the Supreme Court's summarization of the requirements for manufacturing activity as follows:

> (1) the application of labor and skill (2) which changes a material (3) substantially (4) into a new, different and useful item.

*See, Stewart Honeybee Products, Inc. v. Board of Finance and Revenue*, 525 Pa. 222, 224, 579 A.2d 872, 873 (1990), *citing, Ski Roundtop v. Commonwealth*, 520 Pa. 227, 231, 553 A.2d 928, 930 (1989). We note that *Stewart Honeybee*, deals with taxes imposed under the Pennsylvania Capital Stock Tax Act, 72 P.S. §§ 7601–7606; however, *Golden Triangle Broadcasting, Inc. v. City of Pittsburgh*, 483 Pa. 525, 397 A.2d 1147 (1979) suggests that it is permissible to defer to other cases interpreting "manufacturing" under several other tax statutes. 483 Pa. at 528 n. 6, 397 A.2d at 1148 n. 6.

**5.** Our scope of review in a tax assessment appeal is limited to determining whether the trial court abused its discretion, committed an error of law or whether its decision was unsupported by substantial evidence. *Westinghouse Electric Corporation (R & D Center) v. Board of Property Assessments, Appeals and Review*, 138 Pa.Commonwealth Ct. 30, 587 A.2d 820, *appeal allowed*, 528 Pa. 182, 595 A.2d 1145 (1991).

determining that Allied's operation constitutes manufacturing under Section 2(4) of the Act. *See* 53 P.S. § 6902(4). The Appellants contend that Allied merely transforms one form of "non-consumptionable" veal (a dead carcass) into another form of "non-consumptionable" veal (cut and portioned, raw veal) and therefore that Allied's business amounts to a food processing operation which does not substantially change one product (veal) into a new, different and useful item thereby entitling Allied to an exemption. Thus, we must determine whether, as a result of the production methods employed by Allied, there has been a substantial transformation in form, qualities and adaptability in use so as to produce a new, different and useful article. *See Van Bennett Food Co., Inc. v. City of Reading,* 87 Pa.Commonwealth Ct. 30, 486 A.2d 1025 (1985).

The facts regarding Allied's business activity are not in dispute and as established at trial are summarized as follows.[6] Allied buys live calves at auctions in Pennsylvania and New York. (R.R. 112a–113a.) The calves are then transported to Binghamton, New York where they are slaughtered and "debowled" by a third party contractor. (R.R. 112a–113a.) The dead calves then arrive at Allied's facility in Scranton where they are skinned, "debonned", and then cut and portioned into veal cutlets, stew, roast, cube steaks, and trimmings. (R.R. 82a, 88a–92a.) The cut meat is then packaged and frozen for subsequent distribution.[7] (R.R. 94a–97a.)

■ Whether or not an article is a manufactured product depends upon whether or not it has gone through a substantial transformation in form, qualities and adaptability in use from the original material, so that a new article or creation has emerged. *See General Foods Corporation v. Pittsburgh,* 383 Pa. 244, 118 A.2d 572 (1955). If there is merely a superficial change in the original materials, without any substantial and well signalized transformation in form, qualities,

and adaptability in use, it is not a new article or new production. *Commonwealth v. Weiland Packing Company,* 292 Pa. 447, 450–451, 141 A. 148, 149 (1928).

Allied's operation does not constitute manufacturing as that term has been construed in the repeated decisions of our Supreme Court. In *Weiland Packing,* the Supreme Court denied the "manufacturing" exemption to a corporation which cut, cured and smoked hams from the carcasses of slaughtered animals. The Supreme Court reasoned that "the purpose and use for which it [the ham] was originally cut from the carcass as a ham is exactly the same—to be used as food." 292 Pa. at 453, 141 A. at 150. In *Armour & Co. v. City of Pittsburgh,* 363 Pa. 109, 69 A.2d 405 (1949), the Supreme Court determined that a meat-packing company's activity, in which animal carcasses were skinned, "dehaired", cut into various parts and portions, and prepared for the market, did not constitute manufacturing but instead was merely a processing operation. *See also Commonwealth v. Consolidated Dressed Beef Co.,* 242 Pa. 163, 88 A. 975 (1913) (a company whose operations involved the slaughtering of livestock, the halving and refrigeration of the carcasses, and the subsequent portioning of the carcasses for purposes of sale was not engaged in manufacturing).

The change in the veal herein does not result in a new and different product as the final meat products are not put to a use other than that which had been intended for the original product. *See Armour & Co.,* 363 Pa. at 115, 69 A.2d at 408 (certain articles produced by the packers, such as soaps, glue, cosmetics, and animal shortening, were considered manufactured). Allied's operation does not result in a substantial transformation in form, qualities and adaptability in use which produces a new, different and useful article so as to entitle it to a manufacturing exemption. Therefore, the trial court erred

---

6. Allied's Chief Executive Officer, Michael Paolucci (Paolucci), testified regarding Allied's production operation and provided narration to a video which illustrated the same. It is undisputed that Allied's operation involves the applications of skill and labor; however, such factors, neither individually nor collectively, convert what is essentially a mere processing operation

into a manufacturing one. *See Armour & Co. v. City of Pittsburgh,* 363 Pa. 109, 69 A.2d 405 (1949).

7. The calves also yield hides and bones which are subsequently distributed as well. (R.R. 82a.)

in granting declaratory judgment in favor of Allied and against the Appellants. Accordingly, the order of the trial court will be reversed.

## ORDER

AND NOW, this 1st day of February, 1995, the order of the Court of Common Pleas of Lackawanna County, dated December 28, 1993, is reversed.